**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NUVEEN MUNICIPAL TRUST, on behalf of its series Nuveen High Yield Municipal Bond Fund, a Massachusetts Business Trust, |  |
| Plaintiff, |  |
| v. | Hon. Garrett E. Brown, Jr. |
|  | Civil Action No. 08-5994 (GEB) |
| WITHUMSMITH+BROWN, P.C., a New Jersey Professional Corporation, LINDABURY, MCCORMICK, ESTABROOK & COOPER, P.C., a New Jersey Professional Corporation, | **MEMORANDUM OPINION** |
| Defendants. |  |

**BROWN, Chief Judge:**

This matter comes before the Court on the jurisdictional remand of the U.S. Court of Appeals for the Third Circuit (Doc. Nos. 87, 89), which asks this Court to consider whether it had jurisdiction to enter the Order of October 7, 2009 (Doc. No. 82 ("Dismissal Order")) that dismissed Plaintiff's Complaint with prejudice. This Court has considered the parties' submissions and decided the jurisdictional issue without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court finds that subject matter jurisdiction existed when this Court entered the Dismissal Order. Pursuant to the instructions of the Court of Appeals, this Court will re-enter the Dismissal Order.

*Remand*

This jurisdictional issue comes before the Court through somewhat unusual means.

1

Plaintiff initially filed this action in this District, invoking federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Compl. ¶ 4.) The Court set a discovery schedule, Defendants filed a dispositive motion, and this Court dismissed Plaintiff's Complaint with prejudice. Plaintiff appealed this Court's Dismissal Order, and *then* filed a motion to dismiss before the Court of Appeals, arguing that this Court did not have subject matter jurisdiction. By Order of August 30, 2010 ("Remand Order"), the Court of Appeals granted Plaintiff's motion, vacated this Court's Dismissal Order, and remanded the matter "for the sole purpose of taking discovery on the issue of the citizenship of the parties and the court's subject matter jurisdiction." The Remand Order referenced the Circuit's decision in *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192 (3d Cir. 2007), which held that "the citizenship of both the trustee and the beneficiary should control in determining the citizenship of a trust," *id.* at 205. The Remand Order instructs this Court to either dismiss the matter for lack of subject matter jurisdiction or reenter the Dismissal Order upon a finding of jurisdiction.

By Letter Order of September 8, 2010, this Court ordered jurisdictional discovery to address the issue raised by the Court of Appeals, and the parties filed responsive submissions. Plaintiff filed sealed submissions indicating that it has New Jersey-domiciled beneficiaries whose citizenship defeats diversity jurisdiction. Defendants WithumSmith+Brown, P.C. ("WSB"), and Lindabury, McCormick, Estabrook & Cooper, P.C. ("LMEC") generally opposed Plaintiff's jurisdictional argument and presented alternative jurisdictional grounds: "related-to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b). The Court permitted the parties to file supplemental briefing addressing this theory of jurisdiction. The parties dispute whether the instant litigation is related to a bankruptcy proceeding. The resolution of this issue requires a basic understanding of Plaintiff's Complaint.

The instant dispute arises from Plaintiff Nuveen Municipal Trust's ("Nuveen") purchase of a $10 million Bond Anticipation Note (BAN) from third-party Bayonne Medical Center (BMC). Following the consummation of the loan agreement, BMC filed for bankruptcy in March 2007, and Plaintiff filed suit on December 5, 2008 against WSB and LMEC for their conduct that led Nuveen to enter the loan agreement with BMC. Plaintiff's Complaint in this case presents claims of fraud, negligent misrepresentation, and malpractice against WSB and LMEC, alleging that WSB and LMEC produced a fraudulent audit report and legal opinion concerning BMC's financial obligations that led Nuveen to enter into the loan agreement with BMC. (*See* Compl. ¶¶ 6–18.) In response, WSB and LMEC have filed third-party claims in this case against BMC's officers seeking indemnification for any liability found in this case. Plaintiff's Complaint acknowledges that "BMC is currently being liquidated in a Chapter 7 bankruptcy proceeding styled *In re: Bayonne Medical Center* Case No. 07-15195(MS)," and recognizes that its damages claim against WSB and LMEC may be reduced by "any amounts recovered by [Nuveen] in connection with the bankruptcy proceeding, plus the attorney's fees the Nuveen Fund incurred in the bankruptcy proceeding." (Compl. ¶¶ 193–194.) The docket in the BMC bankruptcy proceedings indicates that the Bankruptcy Court confirmed BMC's bankruptcy plan on April 9, 2009, after Nuveen filed the Complaint in this case.

Defendants argue that related-to jurisdiction lies in this case, because, as of the time that Plaintiff filed its Complaint in December 2008, it was conceivable that the outcome of this dispute would materially affect the distribution of assets in the BMC bankruptcy proceeding. Plaintiff responds that the Bankruptcy Court's approval of a settlement agreement in September 2008 between BMC, as debtor, and Nuveen and others, as secured creditors, fixed Nuveen's recovery against BMC and, therefore, foreclosed any possibility that Nuveen's subsequent claims

3

against WSB and LMEC would affect the distribution of BMC's estate.

*Bankruptcy Jurisdiction*

It is well established in the Third Circuit that, prior to the confirmation of a bankruptcy plan, related-to jurisdiction under 28 U.S.C. § 1334(b) extends to cases where "the *outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* . . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re W.R. Grace & Co.*, 591 F.3d 164, 171 (3d Cir. 2009) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)) (emphasis in original). "[T]he key word is 'conceivable.' Certainty, or even likelihood [of effect on the estate being administered in bankruptcy] is not a requirement." *Copelin v. Spirco, Inc.*, 182 F.3d 174, 179 (3d Cir. 1999) (quoting *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir.1999); *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1181 (3d Cir.1996)). Yet, "there is no related-to jurisdiction over a third-party claim if there would need to be another lawsuit before the third-party claim could have any impact on the bankruptcy proceedings." *In re W.R. Grace & Co.*, 591 F.3d at 172 (citing *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002)). Consistent with most jurisdictional questions, this Court assesses conceivability at the time of filing. *In re SemCrude, L.P.*, 428 B.R. 82, 96–98 (Bankr. D. Del. 2010); *see also In re Enron Corp. Sec.*, 535 F.3d 325, 336 (5th Cir. 2008) (finding that bankruptcy plan confirmation does not divest a District Court of jurisdiction over pre-confirmation claims based on pre-confirmation activities that properly had been removed pursuant to related to jurisdiction); *cf. Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action

brought.") (citation and internal quotation marks omitted).

      The Court is persuaded that, at the time Plaintiff filed the instant matter in December of 2008, it was conceivable that the outcome of this proceeding would have an effect on the BMC bankruptcy proceeding. Ironically, Plaintiff's Complaint reflects that the outcome of the BMC bankruptcy proceeding might affect its damages request in *this* proceeding (Compl. ¶¶ 193–94), but Plaintiff argues that the reverse would not be true. Plaintiff's explanation for this one-way theory of cause and effect—that the Bankruptcy Court fixed its return in the September 2008 settlement agreement, prior to the filing of the Complaint in this case—is not satisfactory, because the settlement agreement expressly reserved Plaintiff's right to pursue claims against third-parties, such as WSB and LMEC, who provided professional services to BMC. (*See* Doc. No. 98 Ex. 4 at 5.) Although the settlement agreement stated that the secured creditors (including Nuveen) had a right to an Allowed Deficiency Claim, "less a dollar for dollar reduction for every dollar received by the Secured Creditors on account of (i) the Allowed Secured Claim and (ii) the Secondary Distribution," (*id.* at 6–7), the Court agrees with Defendants that the reservation of rights to file third-party claims implicitly suggests an intention that recoveries from such claims would be used to offset the secured creditor's claim against BMC, which would alter the overall asset pool available for distribution to BMC's creditors. Otherwise, the secured creditor (here, Nuveen) would be able to recover twice for the same grievance, both against BMC and third-party entities that provided professional services.

      The Court's conclusion is supported by the fact that, on August 1, 2008, four months prior to the filing of its Complaint in this matter, Nuveen filed a motion in the BMC bankruptcy proceeding seeking to compel BMC to respond to its Subpoena for a Rule 2004 examination. (BMC bankruptcy proceeding, Doc. No. 1503.) This motion supported Nuveen's request for the

5

Rule 2004 examination of BMC by arguing, *inter alia*, that "to the extent that Nuveen brings any such causes of action [against BMC's officers, directors and pre-petition professionals] and recovers any amounts, the claim of Nuveen in this case . . . will be reduced, thereby directly affecting the Debtor's estate and the other creditors." (*Id.* at 7–8.)  In other words, four months prior to filing the Complaint in this case, Nuveen filed documents in the BMC bankruptcy proceeding expressly contemplating the impact on the bankruptcy litigation of collateral actions against third-parties that provided professional services in connection with loan agreement in this case. (*See id.* at 7–8.)

Nuveen argues that this case is not related to the BMC bankruptcy proceeding because the measure of damages in this case is the out-of-pocket expenses it incurred in reliance on WSB and LMEC's alleged misrepresentations. *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 297 (3d Cir. 1991); *Duffy v. McKenna*, 81 A. 1101, 1102–03 (N.J. 1912).  The bankruptcy proceeding, Nuveen claims, will only ascertain the "true value" of the Bond Anticipation Note.  The Court is not convinced that this measure of damages, commonly utilized for publicly traded securities whose values are in constant flux, applies to a loan agreement that has a fixed market value.  So far as the Court can tell, Nuveen is simultaneously seeking the same damages—unpaid principle and interest on the loan—from both the debtor and third-parties that provided professional services in connection with the loan agreement.  Pursuant to Nuveen's theory of damages, Nuveen has no answer for how damages would be calculated in this case if Nuveen obtained a favorable judgment in this case prior to receiving its share of the distribution in the BMC bankruptcy.  This consideration is no mere hypothetical.  Indeed, Nuveen does not suggest that its claim against BMC in the bankruptcy proceeding had been satisfied by December 2008 when it filed the Complaint, and Nuveen does not indicate how much, if any, of its claim against BMC

6

has been satisfied to date. Thus, it is still conceivable that a favorable judgment in this case would affect BMC's liabilities and the handling and administration of its estate in the bankruptcy proceeding. Consequently, this Court has related-to jurisdiction over this action.[1]

### *Conclusion*

For the aforementioned reasons, the Court finds that it has related-to jurisdiction under 28 U.S.C. § 1334(b), and the Court will re-enter the Dismissal Order in accordance with the Court of Appeals' Remand Order.

Dated: November 29, 2010

                                                  /s/ Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.

---

[1] The Court notes that the exercise of jurisdiction here does not interfere with the well-pleaded complaint rule that the Plaintiff is the "master of the complaint." *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). Here, Nuveen filed this action in federal court asserting diversity jurisdiction, only to abandon such grounds for jurisdiction upon the appeal of an adverse judgment. Accordingly, the appropriate inquiry is not whether the original grounds for jurisdiction were sound, but whether this Court would have had original jurisdiction at the time of judgment. *See Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702 (1972) ("Longstanding decisions of this Court make clear, however, that where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court."). This Court had related-to jurisdiction under 28 U.S.C. § 1334(b) at the time of the final judgment in this case because it was conceivable at the time of filing that a favorable judgment in this case would affect BMC's liabilities and the handling and administration of its estate in the bankruptcy proceeding.